I just want to incorporate, by reference, all the arguments I made in my brief, specifically for the CISO. Absolutely. We have studied your briefs, and we understand that you're not giving up any of those arguments. Thank you very much, Your Honor. Thank you, Your Honor. Particularly dealing with the issue of identification, the evidence is pretty clear at trial. Certainly, my client wasn't identified as being one of the individuals who went into the pizzeria. Could you speak up just a little bit? Sorry, Your Honor. My client was not identified as being one of the individuals going into the pizzeria and being one of the robbers. I believe his alleged role was that of an aider and a better. And the only evidence, if you'd want to call it evidence, was that he was apprehended, I believe, in the 3600 block of Livingston Street with two of the robbers. There was no identification whatsoever that he was the getaway driver or a lookout. The record's completely barren as far as any participation on his part. Well, when he was spotted by the police, he was with the other two who were identified, but they were apparently divvying up the proceeds of the robbery. And he ran from the scene when approached by police. Respectfully, I think it's a stretch to say that they were divvying up the proceeds. I don't believe there's any evidence indicating that there was being monies exchanged between the individuals. Well, he had $140 in his pocket, and one of the others had another hundred and some in his pocket. But isn't that a reasonable inference that a jury could make? Not necessarily, Your Honor. I suspect that we look around this room, most of the individuals at least have $140 in their pockets. I don't have $140.  And we're just talking about a situation where he was at the wrong place at the wrong time. There's no direct evidence that he was involved. That's clearly one reasonable inference, but why is that the required inference? Why should we usurp that decision from the jury? I think there needs to be established that he had some sort of role in this particular robbery. It needs to be clear rather than pure speculation. Is that tantamount to saying that he can't be convicted on circumstantial evidence alone? No, not at all. But there has to be some circumstantial evidence that ties him into part of the planning, or as a participant, that has to be somewhat solid. Well, we take a look at the connections. The place that was robbed was a place where his sister, Tracy, worked. Tracy was not present on the night of the robbery, so Tracy couldn't very well identify him. But one of the patrons, or one of the persons inside the pizzeria, I think it is, spotted a gray vehicle passing through with three people inside. I think three people inside. There were only two robbers. So there was a third person. Shortly after that, three people, including your client, Zegosevsky, was seen with the two who actually committed the robbery. Zegosevsky ran from the scene when approached by police, and he was picked up in the vicinity of the car. Why couldn't the jury from those facts infer that he was the getaway car driver? Well, Your Honor, first of all, going back to Sherry Wright, I believe she was the individual. She was actually an employee that worked at the pizzeria. She indicated that she wasn't sure whether or not there were two or three individuals driving the vehicle, and she also initially indicated when Zegosevsky was apprehended that she thought it was Zegosevsky, but then she subsequently, after thinking about it, believed that it wasn't Zegosevsky. I believe the Bailey case sets forth the analysis. I cite it in my brief. I just want to bring particular attention to it. It's a 416 Federal 2nd at pages 1113 to 1115. It sets forth the elements that are necessary, and it talks specifically about an individual being in a situation where he flees. Fleeing doesn't necessarily indicate consciousness of guilt. That can also be other aspects. Wait a second. Why not? If you run away when approached by police, why can't the jury infer consciousness of guilt? They need to have more than just a person fleeing or a person being present within the visuals that committed the crime. Zegosevsky wasn't present at the scene of the crime. Zegosevsky was present at a location outside of the scene of the crime. That's a big factor that needs to be taken into consideration as far as the reasonableness of the jury in making these inferences. Without that, if Zegosevsky was at the scene of the crime, that would make the inference much stronger, but since he was not, it makes it much weaker that he was simply with these individuals. There's a lot of reasons why people flee. Sometimes they don't want to be witnesses. Sometimes they don't want to get caught up. And the Bailey case points this out quite eloquently, the reasons why people flee. Anything to be made of the fact that Greenstein, one of the persons implicated in the actual robbery, went to Zegosevsky's apartment just after the robbery? I believe it was his sister's apartment that he went to. He doesn't keep the best of company, needless to say. I don't think that's reasonable. I believe there's testimony that he knows Tracy Zegosevsky, and John Zegosevsky has eaten many times at the pizzeria, so I don't know what the motivation was for him. I think it's unfair to infer that my client had any kind of guilt simply because this individual felt that Tracy Zegosevsky would be an assistant. You would have to show that no reasonable jury could find all the elements of the offense beyond a reasonable doubt. Is that the standard that we're looking at? I believe the government's given all the basis, all the reasonable inferences. A reasonable jury couldn't find the unreasonable doubt, yes, sir. And you say that no reasonable juror under these circumstances could find all of the elements necessary to conclude that Zegosevsky was involved in the robbery. Well, sir, Your Honor, he wasn't present at the scene. He wasn't identified by anybody. And certainly this individual was known to everyone in the pizzeria. He wasn't identified. The videotape indicates that he wasn't one of the robbers. The government conceded that he wasn't one of the robbers. It was interesting that the alleged getaway car, no fingerprints. If he was a driver, where's the fingerprints? He wasn't apprehended with any gloves on. There weren't any fingerprints taken. There wasn't anything to tie him to that particular car. I believe the vehicle was stolen if he was a getaway driver. And there wasn't anyone that identified him as being a getaway driver. He was out there, and for whatever reason, he came in contact with these individuals. That's all that the jury actually had to work with. Everything else is pure speculation that they were drawing from. And again, I hearken back to the Bailey case. In the Bailey case, the facts in the Bailey case were much stronger than this case. And your brethren from the D.C. Court of Appeals reversed. And the case in Bailey was much stronger than Zborepsky. I think I asked the court to take a close look at Bailey when it renders a decision in this matter because I think it's very illustrative as to dealing with a particular individual such as my client, which is primarily being charged as an aider and abetter, was found guilty as an aider and abetter. Not necessarily a principal, but he did not go in. I have no further remarks. Any other questions? Thank you very much. Thank you. I'd like to reserve three minutes for rebuttal. I forgot to indicate that. All right. Thank you, sir. Mr. Endin. Good morning. Good morning. May it please the Court. William Endin for the government. The Court's obviously interested in the identification issue with respect to the appellant John Zborepsky. There's quite a bit of evidence here to prove that John Zborepsky did, in fact, participate in this robbery. First of all, this Court has recognized in the past the importance of a getaway driver in the grand scheme of committing a robbery. So I don't think there's any question that a getaway driver can be an aider and abetter if there is, in fact, a getaway driver. In this instance, we have two separate witnesses who were inside the pizzeria during the course of the robbery and then ran outside immediately after the robbery that was concluded, who saw a car drive past the pizzeria, specifically with three individuals inside the car. Both Sherry Wright and Harry Zisios, the owner of the pizzeria, said that there were three people inside the car. They also both said that two of those people had their faces covered, and we know from the video and from their testimony as well that the two robbers who were inside the pizzeria had their heads covered. So here we have three people inside the car, two with their heads covered, two people have just run outside of the pizzeria with their heads covered. One can infer, and it's reasonable to infer, that those two people got into this getaway car and there was a third individual driving the getaway car.  That's correct, Your Honor. And what was the time between leaving the robbery and the getaway car? Within seconds or even minutes, Your Honor, a matter of minutes. Well, minutes is different from seconds. Well, I would say essentially they ran out the back door of the pizzeria. There is a short alley between the back door and the street. As they were on the street or approaching the street, they saw the getaway car drive by. We know that within a matter of less than 10 minutes, the three defendants in this case were found at the back of the 3647, I think it is, Livingston, within a couple of blocks. You mentioned there was no facial identification. Was there any direct evidence linking him to that vehicle, linking Zagrzebski to the car? There was no direct evidence. There certainly was circumstantial evidence, however. Tell us. Well, again, we know that there were the three people in the car. Within, again, a matter of minutes, three people, the defendants in this case, including John Zagrzebski, were in the backyard or found in the backyard of a house within two and a half blocks or so of the pizzeria. The getaway car was parked about a block away from where they were located. And the three people were Ian Greenstein and Alan French, both of whom were identified as the robbers, and the third person was John Zagrzebski. Well, they apparently knew each other. Why couldn't this be a situation where they just simply met some old friends in somebody's backyard? Well, for that to have happened, Your Honor, again, we know that there were three people in the getaway car when it left the scene of the robbery. So whomever was driving the getaway car would have then had to have left the scene, and John Zagrzebski would have had to have coincidentally appeared from some other location to join the robbers. Yeah, but that's a real possibility, though, is it not? It's a remote possibility. However, the standard here clearly is that all rational inferences go in favor of the government. Well, all we know for sure is that Zagrzebski was with the two identified robbers about ten minutes after the robbery. Well, we know that for sure, yes, Your Honor. We also know for sure that there were three people in the getaway car. Or we think, assuming that was the getaway car. Assuming that was the getaway car. We don't know that it was the getaway car, do we? Fair enough, Your Honor. Again, the inferences that a jury can draw, certainly they could conclude that it was the getaway car. I would add, Your Honor, that we also know that there is this relationship that previously existed between John Zagrzebski and Ian Greenstein, and then, of course, there's the relationship. So we have this relationship, and the question is what weight is given that when we have nothing, when we can't place him at the scene? I'm sorry? The question is what weight do we give that when we can't place Zagrzebski at the scene of the crime? Well, I think the question is what weight could the jury have reasonably given that? I understand. What else do you have? That's essentially it, Your Honor. Well, we also have, again, John Zagrzebski, when he is, he does flee the scene, so there's consciousness of guilt, as the Court has already pointed out. Then when he is stopped by the police, Sherry Wright is brought to the scene where he's stopped to have a confrontation to determine whether he was one of the people, or she can identify him as one of the people inside the store. He is repeatedly saying to her, I wasn't in your store, I wasn't in your store, which, again, is consciousness of guilt for one thing, and it's also an acknowledgment on his part that he knows what this is about. He knows that there was a robbery in the store, which is indicative of his knowledge of this. Let's figure out what relevance that statement had. Of course, if he didn't know that there was a robbery in the store, that might be very interesting, but when he was arrested, wasn't he told that he was being arrested because of a robbery at the Casa Bella Pizzeria? Your Honor, there's no evidence in the record, one way or the other, regarding what the police specifically told him, but I would submit to the Court again that a rational juror could make the inference that, based upon his statements, he was acknowledging knowledge of the robbery and implicitly his participation in that robbery by essentially trying to exculpate himself by limiting his involvement in the actual crime. Sherry Wright was taken to Zagrzebski to make an identification. Correct. Correct. Did she make an identification? It's a little bit unclear from the record, Your Honor. She stated during the course of the trial that she did not believe that he was the person in the store. She had given a prior statement to the police in which she said that she recognized the voice of the individual and believed that he had been in the store before. We also know from other parts of the record that she knew who John Zagrzebski was and that he had been in the store before. So essentially, one of the defendants was attempting to make the point that it could have been John Zagrzebski in the store, that would be Ian Greenstein because he was the other person accused of being in the store, and Mr. Zagrzebski's attorney was attempting to persuade the jury that he, in fact, wasn't the person in the store. So it's a little bit ambiguous in terms of the testimony, but certainly the government's theory was that Ian Greenstein and Alan French were the two people in the store, and to whatever extent Sherry Wright may have believed that John Zagrzebski was actually in the store, she was mistaken. And that's corroborated by the fact that he was wearing a Pittsburgh Steelers jersey, which didn't match what the people in the store were wearing based on the video. What did the testimony reveal as to what the officer, I think it was Officer Walsh and some other officer, saw when they saw the three defendants for the first time? What exactly were they doing? Officer Walsh testified that he responded to the prowler call in the backyard. As he approached, he could hear a fence rattling, a chain link fence rattling. As he actually turned the corner into the breezeway where the three people were located, he could see three people there. He immediately recognized that two of the people were wearing clothing that matched what the people in the video were wearing. He drew his weapon. He then saw that these two people also were armed, had guns, and then they immediately fled. Were they standing together? They were huddled. I think he described it as being huddled together. Was the jury entitled to think there was something unusual about three grown men huddled together at 11 p.m. at night in February in somebody else's yard? Certainly. Of course they were, Your Honor. That's a very good point. What about Tracy Zagrebski? Was she supposed to work that night? I believe the evidence was that she had left, gotten off of her shift early, left early that night. There wasn't a lot of discussion as to what her regular hours were or whether that was in keeping with her normal routine. But to follow up on Your Honor's point, again, that's indicative of John Zagrebski's participation because he would have known whether or not his sister was working, or one could infer that he would have known whether or not his sister would have been working and would have wanted the robbery to have been perpetrated at a time when she wasn't working, both to reduce the risk to her as well as to limit the possibility of a positive identification. The only thing we know for sure, I take it, is that the three of them were caught together. First, that he fled, which certainly can be evidence of guilt or consciousness of guilt, and that they were found, the three of them were found together. They're the only things we can say for sure. Is that correct? Well, when you say they're the only things we can say for sure, I wouldn't agree with that respectfully, Your Honor. I mean, there is a variety of other pieces of circumstantial evidence. But in terms of direct circumstantial evidence, everything else is inferential. Is that correct? Well, the proceeds from the robbery and the guns that were used in the robbery were recovered from the area immediately surrounding where they were. I understand that. The car that was identified as the getaway car was found a block and a half away from where they had been huddled. So those are additional facts that I would also point to. So what was the proximity of the money and guns and everything to the three when they were arrested? It was in the same backyard area, so within 20 feet or so. All right. Oh, I'm sorry. The money was there. The guns were a little bit further up the block. One was on a roof, the roof of a back porch. Another was in some bushes just on the edge of the street that they fled from about two blocks, or sorry, two houses, two yards in from where they had initially been seen. All right. So that's definite evidence that hasn't been contradicted. Absolutely. Your take on the standard is that if any rational juror could come to the conclusion this one did, we would have to affirm? Yes. Okay. Good. Thanks. Thanks, Mr. Arden. Thank you. Good. Mr. Adamo? Let me just ask you, what about the proximity of the guns and the money to your client? Why doesn't that tie him into this whole thing? Your Honor, he has no control over what these other individuals do. There's no evidence tying him to being a lookout or a getaway driver. Everything is purely speculative. There's no identification. There's no statements. There's no nothing tying him at all. This is purely speculative. There's nothing. He wasn't identified as being a robber. None of the co-defendants identified him as being a participant. Nothing matches. He was just out there on the street, wrong place, wrong time. There's nothing to tie him in. He doesn't keep the best of company, but that's not enough to convict this man. He doesn't meet any of the elements of aiding and abetting. Is the jury told that they could consider flight as evidence of guilt? Sure, you can consider flight as evidence of guilt. There's no question about that, but that's, again, the Bailey case deals specifically with that issue. And it gives a great analysis of why people run. And it's not necessarily because they're guilty. They don't necessarily want to be a witness or hooked up. I know the reason why he ran, but it's not part of the record, and I'm not going to go into that. It would be inappropriate. But needless to say, he did run. But I think you cannot find this man as an aider or abetter simply because he ran and he was with the wrong people. And close proximity to the robbery when there's no evidence whatsoever to tie him into this robbery. There's nothing. There's absolutely nothing to tie him in other than the fact that he was with these two other individuals who had guns and money, admittedly, and $140. Anything further? Thank you. The case was very well argued. We'll take the matter under advisement. Appreciate the opportunity.